# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| HSBC Bank USA, N.A., as Trustee for PHH 20047-3, | Case No. 2:17-cv-02400-JAD-NJK |
| Plaintiff | |
| v. | **Order Re: Motions for Summary Judgment** |
| Flamingo 316, LLC, a series of Nevada Rental Holdings, LLC, et al; Meridian Private Residences Homeowners Association, a Nevada non-profit corporation, et al., | [ECF Nos. 47, 48] |
| Defendants | |

HSBC Bank USA, as Trustee for PHH 20047-3, brings this action to challenge the effect of the 2013 non-judicial foreclosure sale of a condominium home on which PHH 20047-3 claims a deed of trust. HSBC sues the Meridian Private Residences Homeowners Association (HOA), which conducted the foreclosure sale; condo owners Richard and Iris Cohen, whose failure to pay the HOA assessments led to the foreclosure sale; and Tom and Daniela Dadon, whose LLC purchased the unit at the sale and ultimately conveyed it to Flamingo 316, LLC in a chain of related-entity transfers.[1] HSBC seeks a declaration that the sale was invalid or, at a minimum, PHH's security interest was unaffected by the foreclosure. Alternatively, HSBC sues for unjust enrichment to recoup from Flamingo 316, LLC its costs of maintaining the unit.

HSBC's equitable quiet-title claim is founded on two theories: (1) the foreclosure sale is void because Nevada's statutory foreclosure scheme violated its due process rights; and (2) equity requires the court to set aside the sale due to the inadequate sale price and other

---

[1] ECF No. 1.

irregularities in the foreclosure process. HSBC and the HOA cross-move for summary judgment on this claim. Because HSBC's due-process theory fails as a matter of Nevada law, I grant summary judgment on that theory in favor of the defendants. But genuine issues surrounding the adequacy of the sale price and attendant unfairness in the foreclosure process leave me unable to resolve the rest of HSBC's quiet-title claim on summary judgment. So I deny summary judgment on that remaining theory and order the parties to a mandatory settlement conference with the magistrate judge.

**Statement of Facts**

Richard and Iris Cohen purchased the condominium home located at 220 E. Flamingo Road #316, in Las Vegas, Nevada in 2006. They refinanced in 2007 with a $375,000 loan from PHH Mortgage Corporation, secured by a deed of trust.[2] That deed of trust contained an erroneous legal description for the property, so in 2011, HSBC filed a lawsuit in the Eighth Judicial District Court for Clark County Nevada to correct that error. That suit concluded with an April 2012 Stipulation and Order for Reformation of Deed of Trust in which the court declared "that the reformed Deed of Trust, as substitute for the original Deed of Trust, has, from the date of the original Deed of Trust's initial recording on June 1, 2007, encumbered and will continue to encumber, in a first lien position, the entire Property."[3]

The unit is located in the Meridian Private Residences condominium development and subject to certain declarations, codes, and bylaws for its homeowners' association, which require

---

[2] ECF No. 49-2 at 2. I take judicial notice of the recorded documents provided by the parties. Richard Cohen transferred his interest in the property to a related entity, Meridian Resorts, LLC, in 2009. ECF No. 49-8 at 12.

[3] ECF No. 49-8 at 9, ¶ 4. I take judicial notice of the order in Case No. A-11-649329-C.

the owners of Meridian condominium units to pay certain assessments.[4] The Nevada Legislature gave HOAs a superpriorty lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for HOAs to enforce that lien.[5] When the assessments on this unit became delinquent, the HOA commenced non-judicial foreclosure proceedings on this unit.[6]

The original notice of the foreclosure sale purports to have been recorded on July 24, 2013, for a foreclosure sale on "08/20/2103 [sic],"[7] and an amended notice was recorded the next day, reflecting a foreclosure sale on "08/20/2013."[8] However, the only notices of lien appear to have been sent four years earlier in September 2009.[9] Although it does not appear that HSBC was on the recipient list for that lien notice, the Stipulation and Order from the HSBC-initiated state-court litigation to correct the deed of trust, which was prepared by HSBC's counsel, reflects HSBC's "information and belief" that the September 9, 2009, lien notice, and an October 22, 2009, notice of default were recorded against the property.[10] The foreclosure deed reflects that the sale ultimately occurred on September 17, 2013, nearly a month after its noticed date.[11] An entity called Dadon Condos LLC, for which the person most knowledgeable is Richard Cohen's

---

[4] ECF No. 49-2 at 26 (condominium rider).
[5] Nev. Rev. Stat. § 116.3116; *SFR*, 334 P.3d at 409.
[6] ECF No. 47-4 (notice of lien for delinquent assessments).
[7] *Id*. at 5.
[8] ECF No. 47-5 at 2.
[9] ECF No. 47-2–47-4.
[10] ECF No. 49-8 at 5, ¶¶ 10–11.
[11] ECF No. 49-1 at 2.

3

son-in-law, Tom Dadon, was the winning bidder at $5,890.00.[12] But it was Richard Cohen—not Dadon—who attended the sale.[13]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014, because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will extinguish a first deed of trust."[14] Although HSBC's first two claims are captioned as separate ones for declaratory relief and quiet title against Flamingo 316, LLC, they are materially identical. I thus construe these two claims as a single quiet-title claim of the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*: an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[15] The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[16]

Discovery has closed, and HSBC and the HOA cross-move for summary judgment on this quiet-title claim. HSBC argues that the HOA's foreclosure on this unit failed to extinguish its first trust deed for three reasons: (1) Nevada's statutory foreclosure scheme violated its due process rights as the Ninth Circuit recognized in *Bourne Valley Court Trust v. Wells Fargo Bank*;[17] (2) the grossly inadequate foreclosure-sale price, combined with other unfairness and

---

[12] *Id.*; ECF No. 57-1 at 6 (Dadon deposition testimony).

[13] ECF No. 57-1 at 6 (same).

[14] *SFR*, 334 P.3d at 419.

[15] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[16] *Id.* at 1112.

[17] *Bourne Valley Court Trust v. Wells Fargo Bank*, 832 F.3d 1154 (9th Cir. 2016).

4

irregularities in the process requires the court to set aside the sale; and (3) the foreclosure deed's language conveyed only the HOA's lien interest in the property, not the property itself.[18] Both the HOA and the foreclosure purchasers oppose the motion.[19] The HOA also moves for summary judgment in its favor, arguing that HSBC has pled no claim against the HOA—they're all directed at Flamingo 316—and, regardless, the foreclosure process was free of error.[20] HSBC opposes that motion, arguing that the HOA is a necessary and indispensable party and that the foreclosure process was rife with error.[21] I consider each argument in turn.

## Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[22] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[23] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[24]

---

[18] *See generally* ECF No. 48.

[19] ECF Nos. 51, 52. For ease of reference, I refer to Dadon Condos, LLC; Tom Dadon and Daniela Dadon, Trustees of the T&D Nevada Trust; Meridian Resorts, LLC, 220 E. Flamingo Unit 316 Series; and Flamingo 316, LLC collectively as the foreclosure purchasers. Although HSBC's claims appear to be pled against only Flamingo 316, LLC, HSBC has named all of these transferees or transferors as nominal defendants at least, and they have collectively opposed HSBC's motion for summary judgment. *See* ECF No. 52.

[20] ECF No. 47.

[21] ECF No. 50. The Cohens have not appeared and are not participating in these motions, though it appears they have been served. *See* ECF Nos. 31, 32.

[22] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing FED. R. CIV. P. 56(c)).

[23] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[24] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[25] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[26]

**A.     HSBC's due-process claim fails as a matter of law.**

HSBC's lead theory for retaining its deed-of-trust interest is that the statutory scheme in NRS Chapter 116 that authorized this sale violated lenders' due-process rights because it did not require the HOA to send the lender notice of the foreclosure sale.[27] HSBC relies on the Ninth Circuit's opinion in *Bourne Valley Court Trust v. Wells Fargo Bank* to support this argument. The *Bourne Valley* court found the notice requirements in Chapter 116 unconstitutional. The lynchpin of the *Bourne Valley* holding was the majority's interpretation of Chapter 116's notice requirements: it found that the statute's (since-amended) scheme was an opt-in one that required notice of the foreclosure "only if the lender had affirmatively requested notice."[28] The panel expressly rejected the notion that NRS Chapter 116 incorporated the additional notice rules from NRS 107.090 so foreclosing HOAs "were required to provide notice to mortgage lenders even absent a request."[29]

---

[25] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.
[26] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).
[27] ECF No. 1 at 8.
[28] *Bourne Valley*, 832 F.2d at 1157.
[29] *Id*. at 1159.

But in *SFR Investments Pool 1, LLC v. Bank of New York Mellon*,[30] the Nevada Supreme Court held that the *Bourne Valley* majority incorrectly interpreted this state statutory scheme.[31] And because federal district courts must follow the holdings of the state's highest court when applying state law, *Bourne Valley* is no longer controlling.[32] Even HSBC concedes in its reply in support of its motion for summary judgment that its facial-unconstitutionality argument has been "undercut" by the Nevada Supreme Court's holding, and HSBC does not continue to urge this argument in its reply.[33] As I have previously held, and the Nevada Supreme Court has confirmed, the HOA foreclosure scheme in place at the time of this 2013 foreclosure sale did not violate due process.[34] HSBC's due-process theory thus fails as a matter of law.

Although no defendant moved for summary judgment on this theory, I exercise my discretion under Federal Rule of Civil Procedure 56(f) to sua sponte grant summary judgment on this theory in favor of the defendants. Although Rule 56(f) requires a court to first give a party "notice and a reasonable time to respond" before granting a non-moving party summary judgment, I find that this due-process issue was sufficiently addressed by the briefing on the

---

[30] *SFR Investments Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248, 1253 (Nev. 2018).

[31] *Id*. at 1253 ("we decline to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159. NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 and, to the extent NRS Chapter 116 was ambiguous in this regard, legislative history and the principles of statutory construction support this conclusion.").

[32] *See Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000) (quoting *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)) (noting that the circuit's interpretation of state law is binding only "in the absence of any subsequent indication from the [state] courts that the circuit's "interpretation was incorrect."); *see also Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001) ("[I]t is solely within the province of the state courts to authoritatively construe state legislation.").

[33] ECF No. 58 at 1.

[34] *See, e.g., Capital One, N.A v. Las Vegas Dev. Grp.*, LLC, No. 2:15-cv-01436-JAD-PAL, 2016 WL 3607160, at *5 (D. Nev. June 30, 2016).

cross motions, and HSBC has conceded that the law in this area no longer supports its theory.[35] I thus grant summary judgment in favor of the defendants and against HSBC on this due-process violation theory.

**B.   Genuine issues of fact preclude summary judgment on the remainder of HSBC's equitable quiet-title claim.**

Stripped of its due-process-violation aspect, HSBC's equitable quiet-title claim is pared down to the theory that because of the paltry foreclosure-sale price, combined with numerous irregularities in the sale process, equity requires the court to set aside the sale. Quiet-title claims like HSBC's "are governed by" the Nevada Supreme Court's "longstanding framework for evaluating any other real property foreclosure sale: whether the sale was affected by some element of fraud, unfairness, or oppression."[36] "Demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."[37] But "the price/fair-market-value disparity is a relevant consideration because a wide disparity may require less evidence of fraud, unfairness, or oppression to justify setting aside the sale."[38] "Where the inadequacy is palpable

---

[35] 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2720.1 (4th ed. 2018) ("Entering a judgment when there has been a motion but no cross-motion is somewhat different from the situation in which neither party has moved under Rule 56 and the court wishes to act sua sponte. When there has been a motion but no cross-motion, the judge already is engaged in determining whether a genuine dispute as to material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment.").

[36] *Nationstar Mortg. v. Saticoy Bay LLC Series 2227 Shadow Canyon*, 405 P.3d 641, 646 (Nev. 2017).

[37] *Shadow Canyon*, 405 P.3d at 647 (quoting *Shadow Wood*, 366 P.3d at 1112).

[38] *Id.* at 648.

and great, very slight additional evidence of unfairness or irregularity is sufficient to authorize the granting of the relief sought."[39]

HSBC contends that the gross inadequacy in the foreclosure-sale price plus various irregularities in the sale compel me to set the sale aside on summary judgment. It offers the opinion of real-estate appraiser Matthew Lubawy that the property's value at the time of the sale was $138,000, making the sale price of $5,890 less than 5% of the property's actual value.[40]

The foreclosure purchasers respond that Lubawy's "sales comparison approach is inappropriate, and fair market value is irrelevant in a forced sale situation" like this one.[41] They offer no evidence to support this criticism of Lubawy's opinion. Instead they point to the United States Supreme Court's opinion in *BFP v. Resolution Trust Corp.*,[42] in which the Court noted that fair market value "has no applicability in the forced-sale context; indeed, it is the very *antithesis* of forced-sale value" because it "presumes market conditions that, by definition, simply do not obtain in the context of a forced sale."[43] The High Court noted the "glaring discrepancy between the factors relevant to an appraisal of a property's market value, on the one hand, and the strictures of the foreclosure process on the other."[44] "We deem," it concluded, "as the law has always deemed, that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the

---

[39] *Id*. (quoting *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963)).
[40] ECF No. 48 at 4 (comparing ECF No. 15 (appraisal) with ECF No. 1 (foreclosure deed)).
[41] ECF No. 52.
[42] *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994).
[43] *BFP*, 511 U.S. at 537–38.
[44] *Id*. at 539.

requirements of the State's foreclosure law have been complied with."[45] As even HSBC points out, the Nevada Supreme Court similarly recognized in *Unruh v. Streight* that "[f]air market value is generally defined as the price [that] a purchaser, willing but not obliged to buy, would pay an owner willing but not obliged to sell, taking into consideration all the uses to which the property is adapted and might in reason be applied." Here, that price was $5,890.

The conflict between Lubawy's valuation method and the courts' recognition about compromised foreclosure-sale values creates a genuine issue of fact as to the property's value and the extent to which the foreclosure-sale price was inadequate, if at all. Without being able to peg the property's true value, I cannot determine how "palpable" or "great" the price inadequacy is, and thus how much evidence of "unfairness or irregularity" I need to set aside this sale.

Additional fact issues surround the question of whether fraud, oppression, or unfairness impacted the sale. The first irregularity that HSBC notes is its claim that it never received any of the HOA's default notices.[46] But I cannot say that the HOA's failure to provide the lender with copies of those notices had any impact on the sale because HSBC's state-court filings confirm that it had actual knowledge of the lien notices more than a year before the foreclosure sale,[47] and Nevada law rebuttably presumes that the HOA sent all required notices to HSBC.[48] The sale notices also reflect that HSBC was provided with those notices.[49] Still, it appears that the sale occurred weeks after the noticed date.[50]

---

[45] *Id*. at 545.
[46] ECF No. 48 at 7.
[47] ECF No. 49-8 at 5, ¶¶ 10–11.
[48] *See Shadow Canyon*, 405 P.3d at 646 (collecting authorities).
[49] *See* ECF Nos. 49-9 and 49-10.
[50] *See* ECF No. 49-1.

More questions spring from the relationship between the delinquent homeowner and the purchaser. The unit owner who was looking to lose this unit at foreclosure was Richard Cohen, the father-in-law of purchaser Tom Dadon. Although I do not find it unusual that Dadon learned of the foreclosure sale from his father in law, it is curious that Cohen apparently stood in for Dadon at the foreclosure sale.[51]

The final irregularity is the language of the foreclosure deed. Just what interest it transfers is not clear. The deed states that the HOA's agent "does hereby grant and convey . . . ***all its right, title and interest*** in and to" the property.[52] Later references to the conveyed interest state that "Said property was sold . . . at public auction" and that "Grantee being the highest bidder . . . became the purchaser of said property . . . ."[53] The 2010 notices also reflect that the intention was to sell the property, not just the HOA's interest in it.[54] So genuine issues of fact remain over whether the foreclosure deed conveyed the property or just the HOA's lien interest.

These irregularities are not strong enough for me to conclude as a matter of law on summary judgment that the foreclosure sale must be set aside, so I deny HSBC's motion for summary judgment on its equitable quiet-title claim. But they do raise genuine issues of fact about whether unfairness in the process justifies setting aside this foreclosure sale. So, to the extent that the HOA seeks summary judgment on HSBC's equitable quiet-title claim on the argument that "[t]here are no genuine factual disputes regarding the nonjudicial foreclosure sale,"[55] that motion is also denied.

---

[51] ECF No. 57-1 at 6 (Dadon deposition testimony).
[52] ECF No. 49-1 at 2 (emphasis added).
[53] *Id.*
[54] *See* ECF No. 49-17 at 2–4.
[55] ECF No. 47 at 3.

11

## C. The HOA is a necessary party.

The rest of the HOA's motion for summary judgment is not clear about the relief it seeks. The HOA begins its motion by explaining that "there are no discrete claims for relief" against it, so it "files this motion in an abundance of caution to avoid a monetary judgment. . . ."[56] When HSBC points out in its response that the HOA "was joined to this action because homeowners associations are necessary parties under Federal Rule of Civil Procedure 19 when, as here, a lender seeks to rescind or void a[n] HOA foreclosure sale,"[57] the HOA reiterates that its motion was just a precautionary one.[58]

To the extent that the HOA contends that it should be released from this case because it is not the target of any claim, the HOA misses the point of its inclusion in this litigation. HSBC has pled three claims: "Declaratory Relief versus Flamingo," "Quiet Title versus Flamingo," and Unjust Enrichment against Flamingo."[59] It does not seek damages against the HOA; in fact, it seeks no specific relief as to the HOA at all. But if HSBC ultimately obtains a declaration that the foreclosure sale was invalid, the HOA's lien interest will be back in play.

With some limitations not applicable here, Rule 19(a) of the Federal Rules of Civil Procedure requires a party to be joined in a suit if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may (i) as a practical matter impair or impede [its] ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise

---

[56] ECF No. 47 at 3.
[57] ECF No. 50 at 2.
[58] ECF No. 55.
[59] ECF No. 1.

inconsistent obligations by reason of [its] claimed interest."[60] The "complete relief" factor considers whether the existing parties can obtain "consummate rather than partial or hollow relief" and whether there is a real possibility of "multiple lawsuits on the same cause of action."[61] Based on the allegations and the type of relief that HSBC prays for, the HOA is a necessary party because the disposition of this action in the HOA's absence may impair or impede its ability to protect its lien interest. And if HSBC succeeds in invalidating the sale without the HOA being a party to this suit, separate litigation to further settle the parties' respective liens and rights may be necessary. So the HOA remains a proper nominal defendant in this case, and I deny its request to be let out on summary judgment.

## Conclusion

IT IS THEREFORE ORDERED that the HOA's motion for summary judgment **[ECF No. 47] is DENIED**;

IT IS FURTHER ORDERED that HSBC Bank's motion for summary judgment **[ECF No. 48] is DENIED; however, partial summary judgment is *sua sponte* entered in favor of the defendants and against HSBC on its due-process-violation theory.** So, this case proceeds to trial on two claims: (1) equitable quiet title based on alleged inadequacy of price plus sale irregularities; and alternatively, (2) unjust enrichment against Flamingo 316.

. . .

---

[60] Fed. R. Civ. P. 19(a).

[61] *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983).

IT IS FURTHER ORDERED that this case is REFERRED TO THE MAGISTRATE JUDGE FOR A MANDATORY SETTLEMENT CONFERENCE. The parties' obligation to file a joint pretrial order is stayed until 10 days after that settlement conference.

Dated: March 26, 2019

_____
U.S. District Judge Jennifer A. Dorsey